UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANA J. SIERRA,

      Plaintiff,      : <u>DECISION and ORDER</u>

    - against -      : 1:06-CV-01688-ENV-MDG

BALLY TOTAL FITNESS CORPORATION,
GROTTA, GLASSMAN & HOFFMAN, P.C. and
ROBERT T. SIMMILKJAER,

      Defendants.

-----------------------------------------------------------------X

VITALIANO, D.J.

   Plaintiff Ana J. Sierra seeks to remand this action to state court or, in the alternative, to vacate an arbitration award entered against her in an employment discrimination matter. Bally Total Fitness Corporation ("Bally") and Grotta, Glassman & Hoffman, P.C. (collectively "defendants")[1] oppose plaintiff's motion and cross-move for relief of their own.

---

[1] Defendant Robert T. Simmilkjaer was the arbitrator in the underlying arbitration. Mr. Simmilkjaer has not generally appeared in this action to date and, further, it seems unlikely that he will appear. In her Order of December 5, 2006, Magistrate Judge Marilyn D. Go granted a motion to quash the subpoena <u>ad</u> <u>testificandum</u> and for a protective order against the interrogatories plaintiff served on Mr. Simmilkjaer. See <u>Sierra v. Bally Total Fitness</u>, No. 06-cv-1688 (E.D.N.Y. Dec. 5, 2006) at 8 [hereinafter "<u>Sierra</u>, at ___."].

## BACKGROUND[2]

The following facts are undisputed. Plaintiff and Bally agreed to an arbitration using the rules of the American Arbitration Association to resolve plaintiff's claims of discrimination and hostile work environment. See Verified Petition at 1. Grotta, Glassman & Hoffman, P.C. represented Bally during the arbitration. See Verified Petition at ¶ 7. Plaintiff and defendants agreed to accept Mr. Simmelkjaer as the arbitrator. See Plaintiff's Reply in Further Support of Motion to Remand, Exhs. K, L. The arbitration was held August 15-17, 2005, and the award dismissing plaintiff's claims was issued on January 23, 2006. See Verified Petition ¶¶ 14, 16; Memorandum of Law in Support of Motion to Remand, Exh. B. Plaintiff brought a verified petition before the Supreme Court of New York, Richmond County on April 3, 2006 to vacate the arbitration award pursuant to Article 75 of the New York Civil Practice Law and Rules. Relying on diversity of citizenship jurisdiction, 28 U.S.C. § 1332, defendants removed to this Court on April 11, 2006, pursuant to 28 U.S.C. §§ 1441, 1446.[3] Plaintiff moved to remand to

---

[2] For additional discussion of the history of this matter, see Sierra, at 1-3.

[3] Plaintiff asserts that defendants' April 11, 2006 notice of removal was defective as the defendants' failed to pay the full filing fee and argues, accordingly, that the notice of removal was not effectively filed until the full fee was paid. See Plaintiff's Reply at 4. The record reveals that defendants sent a check for the remaining $100 on April 12, 2006 via Federal Express. See Plaintiff's Notice of Motion to Remand, Exh. A. Although the docket does not reflect when the check was received, April 13, 2006 was a Thursday, and it is probable that the check was delivered on that day. Of relevance is that the Clerk of the Court accepted the notice of removal for filing on April 11, 2006. For the purposes of this motion and cross-motion, the Court will treat April 11, 2006, the date recognized by the Clerk of the Court, as the date the notice of removal was filed. Therefore, removal was timely pursuant to 28 U.S.C. § 1446(b).

state court[4] or, in the alternative, to vacate the arbitration award. Defendants cross-moved to confirm the arbitration award and to dismiss as to Grotta, Glassman & Hoffman, P.C.

## DISCUSSION

### A.  Plaintiff's Motion to Remand

Defendants may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to the district court "for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Removal statutes are to be strictly construed, however, and any doubts resolved in favor of remand. See Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F.Supp.2d 367, 382-83 (S.D.N.Y. 2006); Codapro Corp. v. Wilson, 997 F.Supp. 322, 324-25 (E.D.N.Y. 1998). The burden of showing that the exercise of jurisdiction by this Court is proper rests with the party seeking removal. See California Public Employees' Retirement System v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004); Grimo v. Blue Cross/Blue Shield of Vermont, 34 F.3d 148, 151 (2d Cir. 1994).

Plaintiff offers three alternative arguments under 28 U.S.C. § 1447(c) for why this Court lacks jurisdiction to hear this matter: first, because not all defendants joined in the notice of removal; second, because defendants fail to raise a question of federal law; and, third, because defendants cannot meet the requirements of diversity jurisdiction. If a procedural defect proves material or if it otherwise lacks subject matter jurisdiction, this Court would be compelled to remand to state court. See, e.g., LaFarge Coppee v. Venezolana De Cementos; S.A.C.A., 31 F.3d

---

[4] Plaintiff's motion to remand is timely pursuant to 28 U.S.C. § 1447(c).

3

70, 72 (2d Cir. 1994).

### 1. The Rule of Unanimity

Although 28 U.S.C. § 1441(a) does not expressly require that all defendants join in the removal, "there is widespread agreement among the district courts, including those in the Second Circuit, that all named defendants over whom the state court acquired jurisdiction must join in the removal petitions for removal to be proper." Codapro Corp., 997 F.Supp. at 324 (internal quotation omitted). See also Ricciardi v. Kone, Inc., 215 F.R.D. 455, 458 (E.D.N.Y. 2003); Ell v. S.E.T. Landscape Design, Inc., 34 F.Supp.2d 188, 193 (S.D.N.Y. 1999); Miller v. First Security Investments, Inc., 30 F.Supp.2d 347, 350 (E.D.N.Y. 1998). The rule of unanimity, though, is not absolute. District courts have recognized the following exceptions, to be read disjunctively: "(1) the non-joining defendants have not been served with service of process at the time the removal petition is filed; (2) the non-joining defendants are merely nominal or formal parties; and (3) the removed claim is a separate and independent claim as defined by 28 U.S.C. § 1441(c)." Ell, 34 F.Supp.2d at 193. See also Borden v. Blue Cross and Blue Shield of Western New York, 418 F.Supp.2d 266, 269 (W.D.N.Y. 2006); Zerafa v. Montefiore Hosp. Housing Co., Inc., 403 F.Supp.2d 320, 328 n.11 (S.D.N.Y. 2005); Varela v. Flintlock Const., Inc., 148 F.Supp.2d 297, 300-301 (S.D.N.Y. 2001).

Plaintiff argues that because Mr. Simmilkjaer did not join in the notice of removal, the notice is procedurally defective and should be rejected by this Court. Plaintiff further contends that Mr. Simmilkjaer is a necessary party to this action as it is the alleged bias of Mr. Simmilkjaer, acting as the arbitrator, upon which the petition to vacate the arbitration award is

based. Defendants do not dispute that Mr. Simmilkjaer did not join in the notice of removal, but argue that he was not yet a party to the lawsuit, as plaintiff had not served him with the notice of petition and the verified petition at the time they filed the notice of removal, and that, in any event, Mr. Simmilkjaer is only a nominal party.

A nominal party is one against whom or on whose behalf "no cause of action or claim for relief is or could be stated." Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc., 521 F.Supp.1046, 1048 (S.D.N.Y. 1981). See also Bowen v. Home Depot, 2001 WL 920263, *1 n.2 (E.D.N.Y. 2001); Norman v. Cuomo, 796 F.Supp. 654, 660 (N.D.N.Y. 1992); Avon Products, Inc. v. A/J Partnership, 1990 WL 422416, * 2 (S.D.N.Y. 1990). "[T]o be recognized as a 'defendant' for practical purposes, a party must be in an adversarial relationship with the plaintiff. This requirement derives from the Constitution's cases and controversies limitation, which 'forecloses the conversion of courts of the United States into judicial versions of college debating forums.' " Still v. DeBuono, 927 F.Supp. 125, 130 (S.D.N.Y. 1996) (quoting Valley Forge Christian College v. Americans United, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982)). Here, it is clear from the pleadings and the arguments of the parties that Mr. Simmilkjaer does not have an interest in the outcome of this litigation. Mr. Simmilkjaer's litigation strategy shows that he agrees: he has taken no steps to defend himself other than to seek to quash a subpoena and to obtain a protective order against a discovery request and has not adopted a position adverse to plaintiff's claims. See, e.g., Norman, 796 F.Supp. at 658 ("When one additionally considers that the non-consenting defendants have not taken steps that conflict with plaintiffs' position, however, their nominal status becomes abundantly clear."). Were this

Court to vacate the arbitration award as plaintiff asks, plaintiff would be granted no relief against Mr. Simmilkjaer, and Mr. Simmilkjaer would have lost nothing. Mr. Simmilkjaer, simply, is not in an adversarial relationship with plaintiff, and the Court finds him, accordingly, to be a nominal party for the purposes of plaintiff's motion to remand. On this basis alone, then, the rule of unanimity has been satisfied.[5]

2. <u>Federal Subject Matter Jurisdiction</u>

Defendants predicated their removal both on diversity of citizenship, 28 U.S.C. § 1332 and federal question jurisdiction, 28 U.S.C. § 1331.[6] The Court need look no further than

---

[5] As discussed infra, the parties incorporated the AAA rules into their arbitration agreement by agreeing to arbitrate pursuant to them. Those rules, in turn, provide that "[n]either the AAA nor any arbitrator in a proceeding under these rules is or shall be considered a necessary or proper party in judicial proceedings relating to this arbitration." Notice of Motion to Remand, Exh. G, § 37(b). The Court need not reach the issue of whether the AAA rule is dispositive on this and the concomitant question of whether parties can circumscribe or expand judicial review by agreement. Compare Puerto Rico Telephone Co., Inc. v. U.S. Phone Mfg. Corp., 427 F.3d 21, 31 (1st Cir. 2005) ("We agree with the other circuits that have concluded that the parties can by contract displace the [Federal Arbitration Act ("FAA")] standard of review...") and Roadway Package System, Inc. v. Kayser, 257 F.3d 287, 293 (3d Cir. 2001) ("We now join with the great weight of authority and hold that parties may opt out of the FAA's off-the-rack vacatur standards and fashion their own (including by referencing state law standards).") with Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 994 (9th Cir. 2003) ("because Congress has specified the exclusive standard by which federal courts may review an arbitrator's decision... private parties may not contractually impose their own standard on the courts.") and UHC Management Co., Inc. v. Computer Sciences Corp., 148 F.3d 992, 997 (8th Cir. 1998) ("we do not believe it is yet a foregone conclusion that parties may effectively agree to compel a federal court to cast aside sections 9, 10, and 11 of the FAA").

[6] The FAA, 9 U.S.C. §§ 1-307, does not create federal question jurisdiction. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 25 n.32, 103 S.Ct. 927, 942 n.32, 74 L.Ed.2d 765 (1983); Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002). Defendants must show either diversity of citizenship or independent federal question jurisdiction. See Harry Hoffman Printing v. Graphic Communications, Int'l Union, Local 261, 912 F.2d 608, 611 (2d Cir. 1990).

diversity.

Section 1332(a) grants this Court original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States...." Defendants assert–and plaintiff does not contest–that the parties by citizenship are diverse. See, e.g., Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S.Ct. 467, 472, 136 L.Ed.2d 437 (1996). An independent review of the record yields the same conclusion. Plaintiff is a citizen of New York. See Notice of Removal ¶ 5. Each of the moving defendants in this matter is a corporation, and, therefore, is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The uncontested facts in the record show that (1) Bally is incorporated in Delaware and has its principal place of business in Chicago, Illinois[7] and (2) that Grotta Glassman & Hoffman, P.C. is incorporated in and has its principal place of business in New Jersey. See Notice of Removal ¶¶ 6, 7. Mr. Simmilkjaer is a citizen of New Jersey. See Aff. in Support of Motion to Remand, Exh. C.

Plaintiff pegs her defense to the claim of diversity jurisdiction on the amount in controversy provision, arguing that the amount in controversy is zero here as she is seeking to vacate an arbitration award that found no liability and, therefore, there is no amount in controversy since no damages were awarded by the arbitrator. See Plaintiff's Reply

---

[7] Indeed, in her second amended complaint in the underlying arbitration proceeding, plaintiff identifies Bally, the only defendant there, as a foreign corporation incorporated in Delaware and with its principal place of business in Chicago, Illinois. See Notice of Motion to Confirm, Exh. B, ¶ 3.

7

Memorandum of Law at 3-4. Defendants counter that there is an amount in controversy and that it should be calculated in terms of the value of the no liability award to Bally. As plaintiff sought over $18 million in damages in the arbitration, defendants reason, the value of the arbitrator's finding of no liability to Bally easily exceeds $75,000. See Memorandum of Law in Opposition to Motion for Remand at 3-4.

In the complaint before the arbitrator, plaintiff sought $18 million in relief for back and front pay, compensatory damages, liquidated damages, punitive damages, interest, costs and disbursements, attorney fees, and expert witness fees. See Notice of Motion to Confirm, Exh. B. The value of this matter for both parties is clearly greater than zero. Caselaw is in accord as to this result, even if reasoning diverges, since to follow plaintiff's logic, "would effectively preclude any defendant who prevailed in an arbitration from petitioning a district court to confirm the award." Doctor's Associates, Inc. v. Stuart, 11 F.Supp.2d 221, 224 (D.Conn. 1998).

The district courts in this Circuit have adopted slightly differing methodologies for determining the amount in controversy in such circumstances. Some courts hold that the difference between winning and losing the underlying arbitration is the amount in controversy as opposed to the actual award. See, e.g., Doctor's Associates, Inc. v. Puskaritz, 2006 WL 1102762, *2 (D.Conn. 2006); Stuart, 11 F.Supp.2d at 224. Other district courts have held that the value of the arbitration award to the petitioner is the amount in controversy unless the defendant has prevailed, then the relief requested in the underlying complaint becomes the amount in controversy. See, e.g., Prasad v. MML Investors Services, Inc., 2004 WL 1151735, *3 (S.D.N.Y. 2004); North American Thought Combine, Inc. v. Kelly, 249 F.Supp.2d 283, 285-86

8

(S.D.N.Y. 2003). This Court need not choose one methodology over the other as the result in the instant matter is the same under either analysis: $18 million is the amount in controversy. With the requisite amount found to be in controversy among parties with complete diversity of citizenship, this Court has jurisdiction on that ground. The motion to remand must be, and hereby is, denied.

### B. Plaintiff's Motion to Vacate and Defendants' Cross-Motions to Confirm the Arbitration Award and to Dismiss

At the outset, it should be noted that, although defendants style their papers as a motion to dismiss pursuant to Rule 12(b)(6), their moving papers are devoid of any substantive reference to or any argument under Rule 12(b)(6). Instead, defendants simply respond to plaintiff's contentions and arguments advanced on her motion to remand or to vacate. Plaintiff, correspondingly, treats defendants' arguments as responsive to her motion and does not address defendants' purported motion to dismiss. The Court will treat them likewise. In any event, tied to plaintiff's motion to vacate is Bally's motion to confirm, which is addressed infra.

#### 1. Application of Federal Law

This Court adopts Magistrate Judge Go's analysis and conclusion in resolving Mr. Simmelkjaer's motion to quash a subpoena ad testificandum and for a protective order striking interrogatories served on him by plaintiff that the FAA applies to this action as a matter of contract and federal caselaw to the exclusion of state law. See Sierra, at 3-4.

## 2. Plaintiff's Motion to Vacate the Arbitration Award

### a. *The Standard*

This Court may only vacate an arbitration award

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

### b. *Plaintiff's Contentions*

Plaintiff argues that the arbitration award should be vacated (1) due to bias and the appearance of bias arising from the arbitrator's undisclosed relationships with defendants, (2) because the arbitrator disregarded the law relating to the direct evidence of discrimination, (3) because the arbitrator shifted the burden of production of time sheets to plaintiff, (4) because a final and definite award on aiding and abetting was not made, and (5) because the award is irrational. Plaintiff's claims can, therefore, be categorized in two groupings: that the arbitrator acted with bias and that the arbitrator acted in manifest disregard of the law.

i.  Bias

The alleged bias of Arbitrator Simmelkjaer was at the very core of Mr. Simmelkjaer's motion for discovery relief. In resolving that motion, the issue of Mr. Simmelkjaer's bias was fully briefed, and Magistrate Judge Go determined that, under the FAA, not only was Mr. Simmelkjaer, on the undisputed facts, not biased but that there was not even an appearance that he was biased. See Sierra, at 5-7. Plaintiff relies on the same proof here as she did on the motion before Magistrate Judge Go. On this point, as a result of Magistrate Judge Go's determination that plaintiff had made no showing of bias or even an appearance of bias, plaintiff is barred by the doctrine of law of the case, Aramony v. United Way of America, 254 F.3d 403, 410 (2d Cir. 2001), and collateral estoppel, Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998).

In any event, the Court is in full accord with Magistrate Judge Go's comprehensive and well-reasoned analysis of plaintiff's claim of bias against Mr. Simmelkjaer. If plaintiff were not barred from re-litigating the question and the Court were to address it de novo, the Court would adopt and incorporate as its own the following findings and conclusions of Magistrate Judge Go that plaintiff failed to make out a bias claim under the FAA:

> In considering arbitrator bias, courts consider: (1) the financial interest the arbitrator may have in the proceeding; (2) the directness and nature of the alleged relationship between the arbitrator and a party to the proceeding; and (3) whether the relationship existed at the same time as the challenged proceeding. See In re Sun Refining & Marketing Co., 761 F. Supp. 293, 299 (S.D.N.Y.), aff'd, 948 F.2d 1247 (2d Cir. 1991); Sanford Home for Adults v. Local 6, IFHP, 665 F. Supp. 312, 320 (S.D.N.Y. 1987).
>
> In Andros [], the Second Circuit rejected a claim of "evident partiality" under the FAA and upheld the trial court's denial of a request for discovery and an evidentiary hearing on the arbitrator's

11

bias. 579 F.2d at 701-02. One of the arbitrators had failed to disclose that he had served on nineteen arbitration panels with the president of the management company that operated the ship involved in the arbitration. Id. at 701. The court distinguished the relationship as a "professional" one growing out of their service as arbitrators rather than a "business" relationship. Id.; see also Morelite, 748 F.2d at 83 ("to disqualify any arbitrator who had professional dealings with one of the parties . . . would make it impossible, in some circumstances to find a qualified arbitrator at all.")

Here, the "professional" connections between Simmelkjaer and Marcus and members of Marcus's firm are far more attenuated than those at issue in Andros. As the Second Circuit recognized, "a principal attraction of arbitration is the expertise of those who decide the controversy. Expertise in an industry is accompanied by exposure, in ways large and small, to those engaged in it." 579 F.2d at 701; see Morelite, 748 F.2d at 83 ("specific areas tend to breed tightly knit professional communities. Key members are known to one another, and in fact may work with, or for, one another, from time to time"). An arbitrator is not required to "provide the parties with his complete and unexpurgated business biography." Commonwealth Coatings, 393 U.S. at 152. Moreover, plaintiff could have learned of this relationship "just as easily before or during the arbitration rather than after [she] lost [her] case." Andros, 579 F.2d at 702.

In fact, the connections alleged here do not even "create the appearance of bias" prohibited by the AAA's rules. See Andros, 579 F.2d at 701-02; cf. In re Aguinda, 241 F.3d 194 (2d Cir. 2001) (judge's attendance at seminar sponsored by an organization that received funding from party to litigation whose former CEO also spoke at seminar was not ground to reasonably question judge's impartiality). The Second Circuit in Andros, held that the relationship between the arbitrator and the president of the company was not reasonably regarded as one which would create an impression of possible bias. Andros, 579 F.2d at 701. Similarly, there was no "business" relationship between Simmelkjaer and Marcus or his firm, nor did Simmelkjaer have any financial interest in the arbitration.

Sierra, at 5-7.

ii. Manifest Disregard of the Law

As a threshold matter, it should be noted that this Court does not sit as an appellate court to review arbitration awards. See Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004). "It is well established that courts must grant an arbitration panel's decision great deference. A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). An arbitrator's award, ordinarily, will not be vacated merely because the reviewing court disagrees with the award. "On the contrary, the award 'should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached.' " Wallace, 378 F.3d at 190 (quoting Banco de Seguros del Estado, 344 F.3d at 260). See also Westerbeke Corp., 304 F.3d at 212 n.8.

In addition to the grounds for vacating an award specifically set forth in the FAA, case law in this Circuit establishes that an arbitration award may be vacated "if it exhibits 'a manifest disregard of the law.' " Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002) (quoting DiRussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 821 (2d Cir. 1997)). The Court of Appeals for the Second Circuit, however, has repeatedly emphasized that this doctrine is "severely limited", Gov't of India v. Cargill Inc., 867 F.2d 130, 133 (2d Cir. 1989), and gives "extreme deference to arbitrators", DiRussa, 121 F.3d at 821. As such, it is "a doctrine of last resort–its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the

13

FAA apply." Duferco, 333 F.3d at 389. See also Wallace, 378 F.3d at 190. The party seeking vacatur bears the heavy burden of proving manifest disregard of the law. See Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002). To vacate an arbitration award based on manifest disregard of the law, the challenger must show both that the arbitrator knew of a governing legal principle and refused to apply it or ignored it altogether and that the law ignored by the arbitrator was well-defined, explicit, and clearly applicable to the case. See Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 263 (2d Cir. 2003); Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 28 (2d Cir. 2000). As a corollary, the Second Circuit does not recognize manifest disregard of evidence as a basis to vacate an arbitration award: "To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so only for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law." Wallace, 378 F.3d at 193. It is against this very difficult standard that plaintiff's claims will be tested.

In arguing that the arbitrator manifestly disregarded the applicable law, plaintiff first contends that the arbitrator erred because he applied the four-factor test laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), despite plaintiff's direct evidence of discrimination. The argument, however, misstates the arbitrator's findings. As reflected in the opinion and award, the arbitrator acknowledged plaintiff's argument regarding the inapplicability of the McDonnell Douglas factors, Notice of Remand, Exh. B, at 8; it was the direct evidence of discrimination that he found lacking. See id. at 17 ("Since the evidence of

record includes conflicting time frames regarding when the [plaintiff] knew she was pregnant, when she communicated this information to [her co-worker] and [supervisor], and when the alleged discrimination due to her pregnancy occurred, the [plaintiff's] proof of gender/pregnancy discrimination is deficient."), at 18 ("Absent a preponderance of evidence that [her supervisor] knew [plaintiff] was pregnant during the period November 9-26, 2002, the Arbitrator cannot find that his treatment of her, even if abusive, was inextricably related to his knowledge of her pregnancy."), at 19 ("Moreover, there was insufficient evidence that [the supervisor's] treatment of [plaintiff], albeit characterized by vulgar language..., was atypical of the conduct he exhibited toward other employees at the Staten Island facility."), at 20 ("The testimony of [plaintiff's witness] is also fraught with inconsistencies sufficient to diminish its probative value."). As he did not find as a matter of fact direct evidence of discrimination, the arbitrator did not manifestly disregard the law in applying the <u>McDonnell Douglas</u> factors. Indeed, the arbitrator found the evidence so wanting after applying <u>McDonnell Douglas</u>, the arbitrator determined that plaintiff had failed to make out a <u>prima facie</u> case by even that relaxed gauge. <u>See</u> Notice of Motion to Remand, Exh. B, at 36.

Plaintiff's second contention stems from the arbitrator's alleged shifting of the burden of production of time sheets of other Bally employees to her. In making this argument, plaintiff relies on her counsel's request for the production of such time sheets during the examination of an adverse witness, Frederick Infante, Senior Director of Human resources for Bally, who had been called by plaintiff on her own case. Plaintiff's grievance is undercut by the record of the arbitration. First, as the arbitrator found, plaintiff did not request production of the documents 60

days in advance of the hearing as required by the Employment Dispute Resolution Procedure agreed to by the parties. See Verified Petition, Exh. I, § 10.7. Moreover, the burdensome nature of such a late request was magnified when defendants represented that the documents were in dead storage in California. See id., Exh. K, at 735-41. Although the arbitrator ordered their production anyway, id., Exh. K, at 739-40, 744, the record indicates that the documents were not produced during or after the close of the arbitration hearing.

The record does not reveal a further order by the arbitrator to defendants to produce the time sheets. But, the record also does not reflect any sanction against Bally by the arbitrator for failing to produce the documents either. Effectively, the arbitrator had reversed his own order by making his determination without production of the documents. More importantly, since the arbitrator had the obligation to proceed with speed and efficiency, Max Marx Color & Chemical Co. Employees' Profit Sharing Plan v. Barnes, 37 F.Supp.2d 248, 251 (S.D.N.Y. 1999), it was quite appropriate for the arbitrator to make such a practical determination. The arbitrator's effective reversal of his order for Bally to produce the time sheets was certainly not misconduct, Areca, Inc. v. Oppenheimer & Co., Inc., 960 F.Supp. 52, 55 (S.D.N.Y. 1997), or a manifest disregard of the law, Pompano-Windy City Partners, Ltd. v. Bear Stearns & Co., Inc., 794 F.Supp. 1265, 1277 (S.D.N.Y. 1992), and did not render the proceedings unfair, much less fundamentally unfair, Hunt v. Mobil Oil Corp., 654 F.Supp. 1487, 1512 (S.D.N.Y. 1987).

Second, to the extent the time sheets were relevant at all to Mr. Infante's testimony, it would have been in connection with his testimony regarding the reorganization and elimination of shifts, the outsourcing of jobs, including plaintiff's, to a contractor, and the offering of

alternate positions to plaintiff in other Bally facilities. In short, where Mr. Infante's testimony was adverse to plaintiff was in the offering of proof that the elimination of plaintiff's job was for a legitimate reason and was not pretextual. Put another way, if plaintiff had made out a prima facie case, Mr. Infante's testimony to legitimize Bally's elimination of plaintiff's job would have been critical, Kerzer v. Kingly Manufacturing, 156 F.3d 396, 401 (2d Cir. 1998) ("If the plaintiff demonstrates a prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised, and the burden of production then shifts to the employer 'to articulate a legitimate, clear, specific and non-discriminatory reason for discharging the employee' ") (quoting Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995)). But plaintiff was not able to make out a prima facie case, Notice of Motion to Remand, Exh. B, at 5-6, and thus Mr. Infante's testimony went only to an alternate ground for denying plaintiff relief. Thus, any documents that might have called into question his testimony on the reorganization and outsourcing were irrelevant to the arbitrator's ultimate findings and, for this reason too, the failure to produce them cannot be a basis to vacate the award.

Plaintiff's next assignment of error rests on the arbitrator's alleged failure to make a final and definite award on her "aiding and abetting" claim. Plaintiff alleged that two of Bally's employees violated the New York Human Rights Law by aiding and abetting in the discrimination against her through covering up the discrimination and minimizing plaintiff's complaints. See Verified Petition, Exh. L, at 29. This contention, however, flies in the face of the written arbitral award. Specifically, the arbitrator characterized his award as "in full settlement of all claims submitted to this Arbitration," and ruled that "[a]ll claims not expressly

granted herein are hereby[] denied." See Notice of Motion to Remand, Exh. B, at 38.

Finally, plaintiff contends that the arbitrator acted in manifest disregard of the law because the award is irrational. The irrationality claim is grounded on the arbitrator's alleged procedural errors, in not adhering to his initial order for Bally to produce employee time sheets but allowing Mr. Infante to testify on the subject of job and shift restructuring notwithstanding, and substantive error in rendering a decision contrary to plaintiff's testimony and other evidence plaintiff believes supports her claim. In other words, it is irrational because it is procedurally and substantively wrong in plaintiff's view. The contention is, plain and simple, a reargument of the merits of her case. Such reargument is unavailable even in the guise of a manifest disregard of the law claim.

### 3. Defendant's Motion to Confirm the Arbitration Award

Section 9, Title 9 of the United States Code directs the Court to confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title" if "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration". Simply put, unless it finds a basis for modification or vacatur, a court must confirm the award. See Ottley v. Schwartzberg, 819 F.2d 373, 375 (2d Cir. 1987).

The parties agreed that nothing in the arbitration agreement "shall prevent a Party from bringing a proceeding pursuant to the applicable law to vacate or enforce an Award..." and that "[a]ny proceeding pursuant to this E.D.R.P. shall be an arbitration proceeding subject to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, if applicable...." See Verified Petition, Exh. I, § 23.1,

18

§ 21. The parties further agreed that "any arbitration shall be in accordance with the Rules for the Resolution of Employment Disputes of the American Arbitration Association." Id. at § 8.6. The AAA rules, in turn, provide that "[p]arties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction." See Notice of Motion to Remand, Exh. G, § 37(c).

It is well-settled that where the parties agree to "a clause providing for the settlement of controversies by arbitration pursuant to the rules of the American Arbitration Association", the AAA rules are incorporated into the agreement, Varley v. Tarrytown Associates, Inc., 477 F.2d 208, 210 (2d Cir. 1973), and, as a result, the parties have, in fact, consented to judicial confirmation. See St. Lawrence Explosives Corp. v. Worthy Bros. Pipeline Corp., 111 F.3d 124 (Table), 1997 WL 187332, *1 (2d Cir. 1997); P & P Industries, Inc. v. Sutter Corp., 179 F.3d 861, 867-68 (10th Cir. 1999); Paley Associates, Inc. v. Universal Woolens, Inc., 446 F.Supp. 212, 214 (S.D.N.Y. 1978).

Having already found no basis to modify or vacate this award, defendants' motion to confirm the arbitration award must be, and hereby is, granted.[8]

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand or, in the alternative, to vacate the arbitration award is denied. The motion of defendant Bally Total Fitness Corporation to confirm

---

[8] Plaintiff also requested that this Court stay these motions until discovery was completed. On January 3, 2007, Magistrate Judge Go certified discovery complete. Plaintiff's request for a stay is thus mooted.

the arbitration award is granted, and the subject arbitration award is hereby confirmed. Perforce, the proceedings against defendants Grotta, Glassman & Hoffman, P.C. and Robert T. Simmilkjaer are rendered academic and are, therefore, dismissed with prejudice.

The Clerk is directed to enter Judgment in accordance with this Decision and Order and to close this case.

SO ORDERED

DATED: Brooklyn, New York
March 27, 2007

/signed/
_____
ERIC N. VITALIANO
U.S.D.J.